## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JACQUELYN A. BOND SHROPSHIRE,** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **Civil No. PJM 09-657** |
| | * | |
| **PHILIP F. GAINOUS,** | * | |
| | * | |
| Defendant | * | |
| | * | |

### MEMORANDUM OPINION

Jacquelyn A. Bond Shropshire has filed an action against Philip F. Gainous, former principal of Montgomery Blair High School, in his individual capacity, pursuant to 42 U.S.C. §1983, alleging that Gainous' failure to abide by school district procedures regarding involuntary transfer of teachers deprived her of her due process rights under the Fourteenth Amendment.

Gainous has filed a Motion to Dismiss [Paper No. 13] under Federal Rule of Civil Procedure 12(b)(6), arguing that Bond Shropshire has failed to state a valid cause of action under Section 1983, and that her suit is barred by the principle of collateral estoppel. For the following reasons, Gainous' Motion to Dismiss is **GRANTED.**[1]

### I.

Bond Shropshire is a 61-year-old, African-American female who currently teaches Business Math, Software Applications, Accounting 1 and Honors Advanced Accounting 2 at Albert Einstein High School ("Einstein") in Kensington, Maryland. Prior to going to Einstein, she taught similar courses at Montgomery Blair High School ("Blair") in Silver Spring, MD.

---

[1] Defendant previously submitted a Motion to Dismiss before Bond Shropshire was granted leave to amend her complaint. Accordingly, this previous Motion to Dismiss [Paper No. 9] is deemed **MOOT**.

Bond Shropshire alleges that in March 2006, Gainous, her former principal at Blair, told her that she might be the subject of an involuntary transfer for the 2006-2007 school year. Elsewhere in her Amended Complaint, Bond Shropshire also states that she "was notified that she was on the involuntary transfer list at the very earliest in May 2006." She alleges that she was formally notified of her involuntary transfer to Einstein via certified mail on July 15, 2006, effective beginning in August 2006.

Bond Shropshire filed a grievance with her union, seeking to block her transfer. The grievance was not sustained, nor was her claim to the EEOC. After receiving a right to sue letter, Bond Shropshire filed suit in this Court against Montgomery County Public Schools and the Montgomery County Education Association, Civil Action No. PJM-08-1011. In that case, Bond Shropshire alleged that her involuntary transfer was discriminatory within the meaning of Title VII of the Civil Rights Act of 1964 and the Age Discrimination Act of 1967. She based her claim of discrimination largely upon an incident which supposedly took place in 1988 when she said Gainous attempted to involuntarily transfer her because there were "too many black women" in the Business Department. Bond Shropshire attempted to amend her complaint in that docket to add Gainous as a defendant, as well as a claim pursuant to Section 1983. The Court denied the motion to amend without prejudice.

Eventually in PJM 08-1011, the Court granted summary judgment in favor of the defendants, finding that simply being transferred from "one position to another within the same employment" was not sufficient evidence of an adverse employment action. The Court noted that Bond Shropshire's claim for lost wages (for which she was seeking compensatory damages) was "completely divorced from Mr. Gainous' decisions" in transferring her. The Court further

found that "there just is no way in which a reasonable trier of fact could conclude that Bond Shropshire was discriminated against."

Thereafter, Bond Shropshire filed the instant suit, alleging that Gainous, acting with discriminatory animus towards her, failed to follow proper procedure for the involuntary teacher transfer process, depriving her of her constitutional right to procedural due process. She claims that according to a Montgomery County Public Schools Teacher Transfer Process Manual, teachers were to be notified by their respective principals of an involuntary transfer by April 13-15 of the year for which the transfer was proposed. She states that an involuntary transfer meeting was to take place on April 28 and involuntary placements were to begin as early as June 14.

The Court notes, however, that Plaintiff's Exhibit A, which is attached to Plaintiff's Amended complaint and cites the aforementioned dates, is clearly dated and intended for the 2005-2006 school year, not the 2006-2007 school year at issue in this case. The Teacher Transfer Process Manual for 2006-2007, attached to Defendants Motion to Dismiss as Exhibit 1, states that teachers were to be notified of involuntary transfers by their principals between March 22-24, 2006. The involuntary transfer meeting was to take place on March 30, 2006 and placements were to begin as early as May 16, 2006.

Bond Shropshire also alleges that an Agreement between the Montgomery County Education Association and the Board of Education of Montgomery County for the School Years of 2005-2007 was violated during her transfer process. Article 25 of this Agreement states "when a unit member is involuntarily transferred, he/she will have the opportunity to make known to the appropriate administrators his/her wishes regarding a new assignment."

Bond Shropshire claims that, as a result of her involuntary transfer, she is now subject to theft, threats, and insults at Einstein.  Bond Shropshire also alleges that Einstein recently experienced a "violent school shooting" as well as a bomb threat.  Bond Shropshire requests reinstatement at Blair to her former teaching position, compensatory damages, punitive damages, reasonable attorney's fees, the costs of the action, and any other relief the Court deems appropriate.

## II.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Two recent Supreme Court cases clarified the standard applicable to Rule 12(b)(6) motions.  *See Ashcraft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Those cases make clear that the simplified pleading standard of Federal Rule of Civil Procedure 8(a) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 556 n.3.  Accordingly,  a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  In making its determination, the court must consider all well-pled allegations in a complaint as true and construe all factual allegations in a light most favorable to the plaintiff.  *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001).  The court need not, however, accept conclusory factual allegations devoid of any reference to actual events.  *See E. Shore Markets, Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## III.

In order to determine whether a state action has violated an individual's rights without due process of law under 42 U.S.C. §1983, the court must first determine whether a

constitutionally protected interest in life, liberty or property exists. *Matthews v. Eldrige*, 424

U.S. 319, 332 (1976). The Court must then determine whether the state deprived an individual

of that protected interest by examining what proper procedural safeguards were required under

the circumstances. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).

### A.

A constitutionally protected property interest is not created by the Constitution, but rather

is "defined by existing rules or understandings that stem from an independent source such as

state law--rules or understandings that secure certain benefits and that support claims of

entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

To have a legitimate property interest, a plaintiff "must have more than a unilateral expectation

of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

First, the Court considers whether Bond Shropshire has a constitutionally protected

property interest in remaining at Blair and "working in her desired environment." Generally,

courts have held that a teacher or professor's interest in retaining her position and not being

transferred or reassigned does not rise to the level of a constitutionally protected property

interest.[2] For example, in *Kilcoyne v. Morgan*, the United States Court of Appeals for the Fourth

Circuit noted that the fact a University failed to follow tenure procedures under the plaintiff's

---

[2] *See Ulichny v. Merton Cmty. Sch. Dist.*, 249 F.3d 686 (7th Cir. 2001) (Principal's loss of certain duties did not constitute deprivation of a property interest subject to procedural due process protection); *Maples v. Martin*, 858 F.2d 1546 (11th Cir. 1988) (Professors have no property interest in not being transferred outside of department); *Garvie v. Jackson*, 845 F.2d 647 (6th Cir. 1988) (no property interest at issue when Department Head reassigned to regular teaching duties); *Kelleher v. Flawn*, 761 F.2d 1079 (5th Cir. 1985) (reappointment of non-tenured faculty member with concurrent reduction of teaching duties does not deprive plaintiff of property interest); *Childers v. Indep. Sch. Dist.*, 676 F.2d 1338 (10th Cir. 1982) (tenured teacher has property interest in continued employment but not in particular assignment); *Faro v. N. Y. Univ.*, 502 F.2d 1229 (2nd Cir. 1974) (University teacher who had her position terminated, refused a new non-tenured position, and was subsequently denied a tenured position did not have a constitutionally protected property interest); *Farkas v. Ross-Lee*, 727 F. Supp. 1098 (W.D. Mich. 1989) (Medical professor had no "property interest" protected by due process clause in not being reassigned or transferred to any other department); *Mahaffey v. Kansas Bd. of Regents*, 562 F. Supp. 887, 889-90 (D. Kan. 1983) ("If plaintiff's argument held sway, then every public employee would have a protected property interest not only in continued employment but in every condition of employment, however trivial.").

contract may "provide a basis for recovery under a breach of promise theory, but that issue is not elevated to a constitutional question solely because the State is a party to the contract." 664 F.2d 940, 942 (4th Cir. 1981). *See also Bishop v. Wood*, 426 U.S. 341, 349 (1976) ("[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.").

Bond Shropshire claims that she is entitled to procedural due process as a result of two agreements: 1) the Teacher Transfer Process Manual; and 2) the Agreement between the Montgomery County Education Association and the Board of Education of Montgomery County. While these agreements provided her with a timeline and a general expectation of proper procedure to be followed regarding the involuntary transfer process, in no sense did they create a legitimate constitutional entitlement to that procedure.  These were timelines and agreements, not laws nor even rules.  As in *Kilcoyne*, Bond Shropshire's expectation of proper procedures may have provided a basis for her filing a grievance with the teacher's union, but nothing beyond that of a constitutional dimension. The Federal courts were not created in order to review each and every personnel decision made by public entities, and are directed not to interfere with such decisions unless absolutely necessary in order to uphold the Constitution. *See Sigmon v. Poe*, 564 F.2d 1093, 1096 (4th Cir. 1977) ("[e]very disagreement between a public employee with his employer over…the terms of his contract does not reach constitutional proportions.").

**B.**

Even if Bond Shropshire had a constitutionally protected property interest in working in her desired environment, she has not demonstrated that she suffered any substantial harm as the result of her being transferred to Einstein.  Courts have looked at many different factors to assess whether and how a plaintiff has been harmed, including loss of reputation, loss of income,

general economic harm, and demotion in rank or duties.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972) (reputation); *Bordelon v. Chicago Sch. Reform Bd. Of Trs.*, 233 F.3d 524, 530 (7th Cir. 2000) (economic harm); *Maples v. Martin*, 858 F.2d 1546, 1550 (11th Cir. 1988) (salary and rank); *Farkas v. Ross-Lee*, 727 F. Supp. 1098, 1104 (W.D. Mich. 1989) (salary and rank). For example, the Eleventh Circuit in *Maples v. Martin* held that the transfer of a group of university professors did not rise to the level of a constitutional deprivation because the transfers did not result in any diminution of salary or rank, and the professors were able to continue teaching in their area of specialization, although for different departments. 858 F.2d at 1550.

Here, Bond Shropshire has not alleged that her salary or rank has been diminished by her transfer. She is teaching exactly the same classes at Einstein that she did at Blair, and her job title and duties have remained the same.  Whatever "harm" she may have experienced by her transfer is not substantial enough to constitute a deprivation of a constitutionally protected property right. *See Baerwald v. City of Milwaukee*, 131 F.3d 681, 683 (7th Cir. 1997) ("[D]eprivations…are not actionable under the Constitution unless they are atypical and significant in relation to the inevitable 'deprivations' that people suffer as a result of contractual disputes and the other ordinary frictions of life."); *Samad v. Jenkins*, 845 F.2d 660, 662 (6th Cir. 1988) ("[T]here must be a substantial, tangible harm and a material change to an employee's status before the employee possesses a viable §1983 cause of action based upon the fourteenth amendment.").

Since Bond Shropshire has not demonstrated that she had a constitutionally protected property interest, nor any cognizable damages, it is not necessary to determine what sort of procedural safeguards would have been appropriate. Accordingly, the Amended Complaint will be dismissed for failure to state a claim under 42 U.S.C. §1983.

# IV.

In addition to her procedural due process claim, Bond Shropshire alleges that Gainous' failure to abide by proper involuntary transfer procedures was due to his discriminatory animus towards her as an African-American woman.

Assuming this issue has been probably pleaded, any claim of discriminatory motive is barred by the doctrine of collateral estoppel. It is true that a previous Title VII action does not preempt a parallel §1983 claim in cases of public employment.  *See Booth v. Maryland*, 327 F.3d 377 (4th Cir. 2003).  However, if the factual issue of discrimination has already been litigated and decided in the previous Title VII action, that issue may not be litigated again in the later case. Collateral estoppel forecloses "the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Ramsay* v. *INS,* 14 F.3d 206, 210 (4th Cir. 1994) (quoting *Virginia Hosp. Ass'n. v. Baliles*, 830 F.2d 1308, 1311 (4th Cir. 1987).

For collateral estoppel to apply, a defendant must establish five elements: "1) the issue must be identical to one previously litigated; 2) the issue must have been actually determined in the prior proceeding; 3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; 4) the prior judgment must be final and valid; and 5) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum." *Id*. at 210.

In the previous case, PJM 08-1011, Bond Shropshire relied upon the very same facts she alleges here in order to support her claim of discrimination; specifically, there and here she cites a 1988 incident whereby Gainous allegedly attempted to involuntarily transfer her because he

felt there were "too many black women" in the Business Department.  In addressing the earlier claims, the Court found that "there is just no way in which a reasonable trier of fact could conclude that the plaintiff was discriminated against."  In other words, the Court found no evidence of racial discrimination in Bond Shropshire's transfer to Einstein, and deciding this issue was a critical and necessary part of the final decision barring relief under Title VII or the Age Discrimination Act.  All the requisites for application of the collateral estoppel doctrine obtain here.  Accordingly, the issue is barred by the doctrine of collateral estoppel.

## V.

Finally, any claim for compensatory damages is also barred by the doctrine of collateral estoppel.  *See Ramsay v. INS*, 14 F.3d 206 (4th Cir. 1994).  Any issue of lost income relating to compensatory damages by reason of Bond Shropshire's transfer has already been actually litigated and determined.

In the previous case, the Court noted that her claim for lost wages from her alleged loss of opportunity to teach summer school, night classes, and weekend classes (for which she was asking compensatory damages) was "completely divorced from Mr. Gainous' decisions" in transferring her.  So again, this issue was actually litigated, and its determination was necessary to decide whether Bond Shropshire sustained an adverse employment decision.  Here in fact, Bond Shropshire does not even allege in her Amended Complaint that she lost income for teaching summer school and night classes; indeed, she has not alleged what the claimed compensatory damages do flow from.

VI.

For the foregoing reasons, Gainous' Motion to Dismiss is **GRANTED**.

A separate Order will issue.


_____/s/_____
**PETER J. MESSITTE**
March 29, 2010                    **UNITED STATES DISTRICT COURT JUDGE**